---

DEANNA JONES,

        Plaintiff,

    v.

BURLINGTON TOWNSHIP,
BURLINGTON TOWNSHIP POLICE
DEPARTMENT, BURLINGTON
TOWNSHIP POLICE OFFICER
STEVEN COSMO #99, BURLINGTON
TOWNSHIP POLICE OFFICER DET.
MARC CARNIVALE #60, REBECCA
CONCEPCION, BURLINGTON COUNTY
DETENTION CENTER, ATLANTIC
COUNTY JAIL, COUNTY OF
BURLINGTON, et al.,

        Defendants.

1:17-cv-01871-NLH-AMD

**OPINION**

---

**APPEARANCES**:

TONI L. TELLES
LAW OFFICES OF ERIC A. SHORE, P.C.
4 ECHELON PLAZA
201 LAUREL ROAD - 8TH FLOOR
VOORHEES, NJ 08043

GRAHAM FAVILLE BAIRD
LAW OFFICES ERIC A. SHORE, P.C.
TWO PENN CENTER
1500 J.F.K. BOULEVARD - SUITE 1240
PHILADELPHIA, PA 19102
    On behalf of Plaintiff

DANTE C. ROHR
JOHN L. SLIMM
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
15000 MIDLANTIC DRIVE
P. O. BOX 5429
SUITE 200
MT. LAUREL, NJ 08054

On behalf of Defendants Burlington Township, Burlington
Township Police Department, Burlington Township Police
Officer Steven Cosmo #99, Burlington Township Police
Officer Det. Marc Carnivale #60, Rebecca Concepcion

EVAN H.C. CROOK
CAPEHART SCATCHARD
142 WEST STATE STREET
TRENTON, NJ 08608

LAURA DANKS
CAPEHART & SCATCHARD PA
8000 MIDLANTIC DRIVE
MT. LAUREL, NJ 08054
On behalf of Burlington County Detention Center and
Burlington County

**HILLMAN**, District Judge

This matter concerns claims by Plaintiff, Deanna Jones,
that she was falsely arrested and maliciously prosecuted for
credit card fraud, which resulted in unconstitutional strip
searches at two county correctional facilities.  Presently
before the Court are the motions of the Burlington Township
Defendants and Burlington County Defendants to dismiss some or
all of Plaintiff's claims.[1]  (Docket No. 11, 15.)  For the
reasons expressed below, the Burlington Township Defendants'
motion will be granted in part and denied in part, and the
Burlington County Defendants' motion will be granted.

---

[1] Also pending is the Burlington County Defendants' motion to
amend their motion to dismiss in order to exchange redacted
versions of the exhibits they filed in support of their motion
for versions that were filed under seal.  (Docket No. 13.)  The
Court will grant this motion as directed in the Order
accompanying this Opinion.

## BACKGROUND

According to Plaintiff's amended complaint, on March 23, 2016, she rented a storage unit at IStorage in Burlington, New Jersey. For the period of March 23, 2016 through March 31, 2016, she paid $41.64 in cash. On April 1, 2016, Plaintiff used her Wells Fargo debit card, which ended in numbers 6309, online to pay $78.48 for the next month's rent.

On April 7, 2016, Defendant Burlington Township police officer Steven Cosmo called Plaintiff at work and asked her if she had rented a storage unit at IStorage using her credit card. Plaintiff alleges that she told Cosmo she used her Wells Fargo debit card, and Cosmo asked her to read her debit card numbers to him, which she did. Plaintiff claims that Cosmo told her to not use her debit card, and asked her to come to the police station to speak with him further. Plaintiff claims that she told Cosmo that she did not have access to a car and that if she had to come she could not arrive until Friday, April 15, 2016 because of her work schedule. She also advised him that she had not done anything wrong and asked if she was required to come to the police station, to which Cosmo replied it was her decision.

Plaintiff claims that she was so taken aback by Cosmo's questions that she believed the call might have been a prank or someone trying to steal her debit card information. Plaintiff called the Burlington Township police department to inquire

about the call and asked to speak with a supervisor.  Plaintiff claims that Cosmo believed that Plaintiff was aggressive when she called, and was angry that she called and asked for a supervisor.

On that same day, an arrest warrant was issued for Plaintiff's arrest for credit card fraud in violation of N.J.S.A. 2C:21-6h.  The probable cause statement was issued by Defendant Rebecca Concepcion, Deputy Court Administrator. Plaintiff claims that Cosmo and Concepcion willfully and maliciously ignored exculpatory information in issuing a warrant for her arrest.  Specifically, Plaintiff claims that when Cosmo called Plaintiff, he never informed her that he was investigating a complaint of credit card fraud by Aida A. Gonzalez-Brown, whose Wells Fargo credit card – not debit card - ended in numbers 6390 – not 6309 - and that Gonzalez-Brown had already cancelled her credit card and was unable to use it again.

After Plaintiff was arrested, she was transported to Defendant Burlington County Detention Center (BCDC).  Plaintiff was subjected to a pat-down search by a female corrections officer, during which no weapons or contraband were found. Plaintiff was then subjected to a strip search, where Plaintiff removed all of her clothing leaving her completely naked and exposed.  Plaintiff was instructed to bend over and cough in

front of and while being observed by a female officer.

Plaintiff claims that she never entered the general population

at BCDC,[2] and was transported to Defendant Atlantic County

Correctional Facility (ACCF) the next day.  At ACCF, Plaintiff

claims she was placed in a cell with three or four other women,

and was again subjected to the same strip search procedure

performed at BCDC.

When Plaintiff was released from ACCF[3], Plaintiff claims

that she was advised to appear in court on May 10, 2016.  When

Plaintiff went to Burlington Township Municipal Court, Plaintiff

was informed that she was not scheduled to be there.  Plaintiff

claims that no one informed her that the charges against her had

been dropped on May 3, 2016.

Plaintiff claims that in addition to her false arrest and

malicious prosecution by Burlington Township, Cosmo, and

Concepcion, the resulting strip searches were unconstitutional

because they were performed without probable cause and were

conscious-shocking, especially because her alleged crime was

minor and she was cooperative throughout the entire ordeal.

---

[2] Plaintiff's complaint does not relate the type of location she
was held, but Plaintiff specifies in her opposition to the
Burlington County Defendants' motion that she was placed in a
holding cell with three or four other women while at BCDC.

[3] The complaint does not indicate why Plaintiff was transferred
to ACCF or when Plaintiff was released from ACCF.

Plaintiff has asserted claims against Burlington Township and its police department,[4] Cosmo, and Concepcion[5] for violations of the Fourth Amendment and New Jersey state law for false arrest and malicious prosecution, and conspiracy to commit those violations, along with a claim for equitable relief. Plaintiff also asserts a claim for municipal liability against the Burlington Township Defendants for its policies and procedures including failing to check or verify facts, failing to cooperate with other police officers to verify facts, and failing to properly investigate incidents of alleged criminal offenses. Plaintiff further claims that the Burlington Township Defendants are liable for the allegedly unconstitutional strip searches.

---

[4] Plaintiff's claims are asserted against Burlington Township and the Burlington Township police department. The Burlington Township Police Department is not a separate legal entity. Accordingly, Plaintiff's claims against the police department must be dismissed. See Boneberger v. Plymouth Township, 132 F.3d 20, 25 n.4 (3d Cir. 1997) (a municipality and its police department are a single entity for the purposes of § 1983 liability). Plaintiff's claims against the individual defendants are in their individual and official capacities, and the official capacity claims are actually claims against Burlington Township. See Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n.55 (1978) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent").

[5] The Court notes that even though Plaintiff named Burlington Township Police Officer Det. Marc Carnivale as a defendant, the complaint does not contain any allegations specific to him. The Burlington Township Defendants have not moved to dismiss Plaintiff's claims specifically against Carnivale.

As for Plaintiff's claims against Burlington County and Atlantic County, Plaintiff alleges Fourth Amendment violations for unconstitutional strip searches, and having policies that permit unconstitutional strip searches. Plaintiff has also asserted a claim for equitable relief against Burlington County and Atlantic County.[6]

The Burlington Township Defendants have moved to dismiss the claims in Plaintiff's complaint against them that arise out of the strip searches. The Burlington Township Defendants argue that they cannot be held liable for the allegedly unconstitutional strip searches because it was BCDC and ACCF that performed those strip searches and maintained the policies and procedures governing them. The Burlington Township Defendants also argue that Plaintiff's conspiracy claim and her count for equitable relief must be dismissed for deficient pleading. The Burlington County Defendants have moved to dismiss all of Plaintiff's claims against them, arguing that the strip search performed on Plaintiff was constitutional under the U.S. Supreme Court's decision in <u>Florence v. Bd. of Chosen</u>

---

[6] A jail is not a "state actor" within the meaning of § 1983. <u>See</u> <u>Crawford v. McMillian</u>, 660 F. App'x 113, 116 (3d Cir. 2016) ("[T]he prison is not an entity subject to suit under 42 U.S.C. § 1983.") (citing <u>Fischer v. Cahill</u>, 474 F.2d 991, 992 (3d Cir. 1973)). Thus, BCDC and ACCF are not proper defendants and must be dismissed.

<u>Freeholders of the County of Burlington</u>, 566 U.S. 318 (2012).

Plaintiff has filed oppositions to both motions.[7]

**DISCUSSION**

**A.    Subject matter jurisdiction**

This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth Amendment of the United States Constitution, as well as violations of the New Jersey Civil Rights Act.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343 and 1367.

**B.    Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that

---

[7] Atlantic County has not appeared in the action.

8

serve as a basis for the claim.  <u>Bogosian v. Gulf Oil Corp.</u>, 562
F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal
Rules of Civil Procedure do not require a claimant to set forth
an intricately detailed description of the asserted basis for
relief, they do require that the pleadings give defendant fair
notice of what the plaintiff's claim is and the grounds upon
which it rests."  <u>Baldwin Cnty. Welcome Ctr. v. Brown</u>, 466 U.S.
147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks
"'not whether a plaintiff will ultimately prevail but whether
the claimant is entitled to offer evidence to support the
claim.'"  <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 563 n.8 (2007)
(quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)); <u>see also</u>
<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 684 (2009) ("Our decision in
<u>Twombly</u> expounded the pleading standard for 'all civil actions'
. . . .");  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir.
2009) ("<u>Iqbal</u> . . . provides the final nail-in-the-coffin for
the 'no set of facts' standard that applied to federal
complaints before <u>Twombly</u>.").

Following the <u>Twombly/Iqbal</u> standard, the Third Circuit has
instructed a two-part analysis in reviewing a complaint under
Rule 12(b)(6).  First, the factual and legal elements of a claim
should be separated; a district court must accept all of the
complaint's well-pleaded facts as true, but may disregard any

9

legal conclusions.  <u>Fowler</u>, 578 F.3d at 210 (citing <u>Iqbal</u>, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  <u>Id.</u>; <u>see also</u> <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.

S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,
181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,
however, "an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's
claims are based on the document."  Pension Benefit Guar. Corp.
v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.
1993).  If any other matters outside the pleadings are presented
to the court, and the court does not exclude those matters, a
Rule 12(b)(6) motion will be treated as a summary judgment
motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

## C. Analysis

### 1. Burlington County Defendants' Motion

The Burlington County Defendants argue that Plaintiff's
claims against them must be dismissed because strip searches of
detainees charged with indictable offenses, such as Plaintiff,
are reasonable under the Fourth Amendment, as determined by the
U.S. Supreme Court in Florence v. Bd. of Chosen Freeholders of
the County of Burlington, 566 U.S. 318 (2012).  The Burlington
County Defendants further argue that Plaintiff's contention that
her crime was "minor" and she was not placed in the general
population of the BCDC does not impact the constitutionality of
her strip search.

As summarized by the court in Moore v. Atlantic County,
2015 WL 1268184, at *6-7 (D.N.J. 2015):

In *Florence*, the Supreme Court held that an institution's policy of subjecting every incoming detainee who would enter into the general population to a strip search, regardless of whether there was reasonable suspicion that the detainee may be in possession of contraband, drugs, or weapons, did not violate the Fourth Amendment to the United States Constitution. 132 S. Ct. at 1523. Petitioner Florence was arrested based on an outstanding warrant for failure to pay a fine that was erroneously in the Burlington County computer system. Id. at 1514. Florence was taken to Burlington County Detention Center, and then to Essex County Correctional Facility, and subjected to a strip search in each facility. Id. The practices at the institutions were to strip search every arrestee who entered the facilities, regardless of whether that person had been arrested for a non-indictable offense, even if there was no reasonable suspicion that the arrestee was concealing drugs, weapons, or other contraband. Id. at 1514-15. Emphasizing the serious health and safety concerns that prisoners and officers face in potentially allowing contraband or undetected disease into prisons, the Court found that the policies at issue were constitutional because they were necessary to meet the needs of the institutions. Id. at 1523. The holding specifically relates to detainees who were searched prior to their admission to the general population. Id. at 1515.

The Court was careful to mention that the circumstances before it "d[id] not require the Court to rule on the types of searches that would be reasonable in instances where, for example, a detainee will be held without assignment to the general population and without substantial contact with other detainees." Id. at 1522-23. This so-called "narrow exception" might also apply where an arrestee has not yet been reviewed by a magistrate or other judicial officer. Id. at 1523.

*Moore*, 2015 WL 1268184, at *6-7.

Specifically with regard to the possible exception set

forth in *Florence*, the court in *Moore* addressed the same strip

search policy at issue in this case:

The so-called Florence "exception" cannot save Plaintiffs' claim. The exception may exist only if two circumstances

are true: the arrestee's detention has not yet been
reviewed by a judicial officer, and the arrestee can be
held apart from the general population.  <u>Florence</u>, 132 S.
Ct. at 1523.  The non-indictable detainees at ACCF who were
strip searched were to be placed into the general
population. Plaintiffs appear to argue that, because
detainees were strip searched prior to their classification
and released before they were actually introduced into the
general population, the exception applies.  This argument
fails both legally and logically.

<u>Moore</u>, 2015 WL 1268184, at *8, *9 n.13 (noting neither party

points toward any evidence as to whether the plaintiffs were

actually introduced into the general population).

The <u>Moore</u> court continued:

The entire reason for conducting a search is to do so
before a detainee would be admitted to his or her final
housing location—whether that be the general population or
elsewhere; otherwise the risks necessitating the strip
search in the first place cannot be abated.  If the Court
were to accept Plaintiffs' argument, then any strip search
conducted before an inmate was classified and sent to his
final location, even if he were slated to be held in the
general population, could risk violating the Constitution
if the detainee ends up not entering the general population
for any number of reasons.

Moreover, Plaintiffs misconstrue the Supreme Court's
words.  The question is not whether a detainee actually
entered into the general population, but whether he could
be held apart from the general population.  The Florence
Court limited its general holding to detainees who "will
be" admitted to the general population, <u>Florence</u>, 132 S.
Ct. at 1513, and any exception was limited to circumstances
where the detainee "can be" held apart from the general
population, <u>id.</u> at 1523 (emphasis added).

<u>Moore</u>, 2015 WL 1268184, at *8.

Here, Plaintiff's complaint, and the documents that form

the basis of her complaint,[8] make it clear that her situation

does not fall into the <u>Florence</u> exception,[9] if such an exception

---

[8] Plaintiff argues that the documents attached to the Burlington
County defendants' motion should not be considered by the Court
because she disputes their legitimacy. Defendants counter that
the documents – the warrant, probable cause statement,
commitment form, and strip search form – can be relied upon
because they form the basis of Plaintiff's claims. The Court
agrees with Defendants. Plaintiff's complaint not only directly
refers to the warrant and probable cause statement, the Court
may consider all of those document in the context for which they
are being offered – not to assess whether the basis for
Plaintiff's arrest was valid, but rather for the fact that she
was arrested and charged with an indictable crime, and for the
fact that a municipal court judge ordered Plaintiff committed to
BCDC pending the presentment of her charges to the grand jury.
A claim that Defendants have submitted false documents to the
Court in support of their motion is a serious one. If Plaintiff
indeed claims the documents submitted are not copies of the
actual court filings arising from her prosecution, she is free
to raise that charge in her amended complaint if she chooses to
file one and if she can make such a claim consistent with
Federal Rule of Civil Procedure 11.

[9] The referenced "exception" derives from Justice Alito's
concurring opinion in <u>Florence</u>, where he joined the "opinion of
the Court but emphasize[d] the limits of today's holding."
<u>Florence</u>, 132 S. Ct. 1524. After reiterating the majority's
rationale for finding the strip searches at issue
constitutional, Justice Alito stated,

> It is important to note, however, that the Court does not
> hold that it is always reasonable to conduct a full strip
> search of an arrestee whose detention has not been reviewed
> by a judicial officer and who could be held in available
> facilities apart from the general population. Most of those
> arrested for minor offenses are not dangerous, and most are
> released from custody prior to or at the time of their
> initial appearance before a magistrate. In some cases, the
> charges are dropped. In others, arrestees are released
> either on their own recognizance or on minimal bail. In the
> end, few are sentenced to incarceration. For these persons,
> admission to the general jail population, with the
> concomitant humiliation of a strip search, may not be

exists.[10]  Plaintiff was: (1) arrested pursuant to a warrant, (2)

her charge for credit card fraud under N.J.S.A. 2C:21-6h was an

indictable offense,[11] (3) her charge was reviewed by a judge, who

ordered Plaintiff committed to the BCDC to await presentation of

her charge to a grand jury, and (4) even though she did not

<hr />

      reasonable, particularly if an alternative procedure is
feasible. For example, the Federal Bureau of Prisons (BOP)
and possibly even some local jails appear to segregate
temporary detainees who are minor offenders from the
general population.

*Florence*, 132 S. Ct. 1524 (Alito, J., concurring) (citations
omitted).

[10] *See* *Bizzarro v. Ocean County*, 2017 WL 2119450, at *11 (D.N.J
May 16, 2017) ("Based on the guidance provided by the Third
Circuit and other courts in this district, as well as the plain
language of Justice Alito's concurrence, it does not appear that
Justice Alito created an exception to the majority's holding,
but rather, he only highlighted the narrowness of the Court's
decision in Florence and provided guidance on what may be
considered an unconstitutional strip search procedure in the
future.").

[11] New Jersey's criminal code "differentiates between 'crimes,'
which are offenses of the first, second, third, or fourth
degree, and 'disorderly persons' offenses." *State v. Jules*,
2017 WL 3160163, at *3 (N.J. Super. Ct. App. Div. 2017) (citing
N.J.S.A. 2C:1-4, which explains that crimes are subject to
indictment by a grand jury and right to trial (i.e., "indictable
offenses"), while disorderly persons offenses do not give rise
to those rights).  N.J.S.A. 2C:21-6h provides, "A person who
knowingly uses any counterfeit, fictitious, altered, forged,
lost, stolen or fraudulently obtained credit card to obtain
money, goods or services, or anything else of value; or who,
with unlawful or fraudulent intent, furnishes, acquires, or uses
any actual or fictitious credit card, whether alone or together
with names of credit cardholders, or other information
pertaining to a credit card account in any form, is guilty of a
crime of the third degree."

enter the general population before her transfer to ACCF, she was housed overnight with other detainees in a cell, with either the intention of her entering the general population or being transferred.  These factors fall squarely within the parameters of a constitutional strip search as found in <u>Florence</u>, and well outside any narrow exception to <u>Florence</u>'s broad rule.

Plaintiff's opposition focuses mainly on the fact that Plaintiff was never housed with the general population at BCDC or ACCF.  That fact, however, is not the precise factor that implicates the <u>Florence</u> "exception."  As set forth above, the exception may exist only if (1) Plaintiff's detention had not yet been reviewed by a judicial officer,[12] and (2) Plaintiff

---

[12] Justice Alito stated that the majority opinion did "not address whether it is always reasonable, without regard to the offense or the reason for detention, to strip search an arrestee before the arrestee's detention has been reviewed by a judicial officer.  The lead opinion explicitly reserves judgment on that question." <u>Florence</u>, 132 S. Ct. at 1525.  Plaintiff argues that based on this statement, it is irrelevant whether she was charged with an indictable offense.  The Court disagrees. Justice Alito's statement focuses on strip searches which occur prior to a judicial officer's review of an arrestee's detention – e.g., an arrest and detention after an automobile stop pursuant to a bench warrant for outstanding fines, as in <u>Florence</u>, or an arrest for non-indictable civil enforcement offenses like traffic tickets and child support arrears as in <u>Moore</u> – and not the Plaintiff's situation, where she was charged with an indictable offense and committed to BCDC by a judge pending the presentment of her charges to a grand jury. Moreover, as this Court has observed:

    Unlike the Chief Justice, Justice Alito does not expressly
    address the issue of a warrant.  He simply and ambiguously
    (intentionally or not) refers to "an arrestee whose

could have been held apart from the general population.

Florence, 132 S. Ct. at 1523.  Putting aside the fact that Plaintiff's detention was ordered by a judge based on a charge of an indictable offense,[13] Plaintiff was housed overnight with

---

detention has not been reviewed by a judicial officer."  If he intended to refer to a warrantless arrest, then the exception he describes in Florence would presumably be limited to such situations.  If, on the other hand, he meant the post-arrest review by a judge in the context of an initial appearance or similar hearing even when the arrest was made pursuant to a valid warrant, then he, most certainly joined by the four dissenters, has carved out a broader exception to Florence that a simple reference to Atwater [v. City of Lago Vista, 532 U.S. 318 (2001)] would suggest. ["Atwater was, of course, a case which expanded police powers to make warrantless arrests."] . . .

[I]f Justice Alito intended to convey a broader exception it is not clear why he would not have joined the dissent. Mr. Florence was arrested in essence for failure to appear at a hearing to enforce a fine and as soon as he appeared before a judge it was determined that he had previously paid the fine and the warrant was stale.  It is hard to imagine a better set of circumstances in which to adopt a rule that a person arrested pursuant to a warrant for a minor offense must first appear before a judge to review their "continued" post-arrest detention before they can be strip searched.  Yet Justice Alito does not articulate such a rule and by his concurrence provides no such relief to Mr. Florence who would have clearly benefitted if such a rule had existed before his detention . . . . [A] rule that directs a jailer to put aside the existence of a warrant and to grade offenses based on some vague notion of "minor" as opposed to "not minor" invites the kind of uncertainty and presents the kinds of security concerns which motivated the Court's holding in Florence in the first place.

Haas v. Burlington County, 955 F. Supp. 2d 334, 344 (D.N.J. 2013).

[13] In Haas, supra note 12, this Court declined to rule on whether

three or four women in a holding cell, with the intention that she was to be eventually housed in the general population at BCDC or transferred.

That situation directly implicates the same safety concerns expressed by the Supreme Court in Florence: "The admission of inmates creates numerous risks for facility staff, for the existing detainee population, and for a new detainee himself or herself." Florence, 132 S. Ct. at 1518. Whether an arrestee is placed with three other detainees in a cell overnight or with hundreds in the general population, the failure of correctional officials to perform thorough searches at intake for disease,

---

the plaintiffs in that case fell within the Florence exception because the plaintiffs were accorded complete relief as a matter of state law. The doctrine of constitutional avoidance directs a court to interpret statutes so as to avoid raising difficult or unsettled questions of federal constitutional law. This Court found that N.J.S.A. 2A:161A-1, -2 directly addressed the legality of the strip searches at issue in the case by providing that a "person who has been detained or arrested for commission of an offense other than a crime shall not be subjected to a strip search unless" certain criteria applied. Ultimately, the Court granted summary judgment in the plaintiffs' favor because they were not charged with indictable offenses, and the criteria under state law for permitting strip searches of detainees charged with non-indictable offenses was not met. See Haas v. Burlington County, Civil Action 1:08-1102 (NLH/JS), Docket No. 185; see also State v. Evans, 155 A.3d 580 (N.J. Super. Ct. App. Div. Feb. 28, 2017), cert. granted, 170 A.3d 303, (N.J. June 29, 2017) (citing State v. Hayes, 743 A.2d 378, 383 (N.J. Super. App. Div. 2000)) (explaining that through N.J.S.A. 2A:161A-1, the Legislature established requirements, designed to provide greater protection than the Fourth Amendment, that must be satisfied before a strip search may be conducted under such circumstances).

gang affiliation, and contraband presents the same risk of harm

to a fellow detainee or staff.[14]   See id.; see also Moore, 2015

---

[14] Plaintiff argues in her opposition brief that because BCDC or
ACCF could have, and did, hold her in a facility apart from the
general population, the Florence exception applies.  Justice
Alito noted that a full strip search may not be necessary when,
in addition to the situation where an arrestee's detention has
not been reviewed by a judicial officer, there are "available
facilities apart from the general population." Florence, 132 S.
Ct. at 1524.  Justice Alito did not define what constitutes
"available facilities apart from the general population," but
cited to Bull v. City and County of San Francisco, 595 F.3d 964,
968 (9th Cir. 2010) as an example.  Id.  In Bull,

> [N]ew arrestees entering the San Francisco County jail
> system were transported to County Jail No. 9, a temporary
> intake and release facility, where they were pat-searched,
> scanned with a metal detector, booked into the system, and
> fingerprinted. The arrestees were then placed in holding
> cells. Those eligible to post bail were given access to a
> telephone and afforded up to 12 hours to secure their
> release on bond. Individuals arrested because of
> intoxication were released when they became sober.
> Arrestees who were statutorily eligible were cited and
> released. See Cal. Penal Code § 853.6.  None of these
> arrestees was strip searched under the challenged policy.
>
> Because County Jail No. 9 is a temporary intake facility
> equipped with holding cells but no beds, those arrestees
> not eligible for release were transported to a jail with
> housing facilities. Arrestees were then transferred into
> the facility's general jail population, which included
> pretrial detainees and convicted inmates. Pursuant to the
> Booking Searches policy, these individuals were strip
> searched prior to admission into the general population in
> order to prevent the smuggling of contraband into the
> facilities.

Bull, 595 F.3d at 968.

   The Court does not make a finding as to whether BCDC did or
did not have an "available facility apart from the general
population," or whether Plaintiff's overnight detention could be
placed in that category, but notes that a key distinction

WL 1268184, at *8 (D.N.J. 2015) (rejecting as failing "both

legally and logically" the plaintiffs' argument that because

detainees were strip searched prior to their classification and

released before they were actually introduced into the general

population, the exception applies).[15]

Consequently, Plaintiff's claims against the Burlington

County Defendants for the strip search performed under the

circumstances described in Plaintiff's complaint fail as a

matter of law under <u>Florence</u>.

The Third Circuit precedent, however, "supports the notion

that in civil rights cases district courts must offer amendment

- irrespective of whether it is requested - when dismissing a

case for failure to state a claim." <u>Fletcher-Harlee Corp. v.</u>

---

between Plaintiff's housing at BCDC and ACCF, as pleaded in her
complaint, and the example provided by Justice Alito as an
alternative separate facility is that the "available facilities
apart from the general population" in San Francisco were holding
cells without beds. Plaintiff admits that she spent the night
at both BCDC and ACCF. Moreover, and more directly relevant to
the pending motions to dismiss, because Plaintiff does not
specifically claim in her complaint - rather than in her
opposition brief - that she was housed in a facility apart from
the general population, or that BCDC and ACCF were equipped to
house her in a facility apart from the general population, that
element of the <u>Florence</u> "exception" has not been properly
pleaded.

[15] The court in <u>Moore</u> also points out, "Plaintiffs do not dispute
that ACCF did not have the capacity to hold non-indictable
detainees who did not consent to be strip searched in facilities
removed from the general population." <u>Moore</u>, 2015 WL 1268184,
at *8.

<u>Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 251 (3d Cir. 2007).  The caveat to that notion is that leave to file an amended complaint should be denied when doing so would be inequitable or futile.  <u>Id.</u>  To the extent that Plaintiff determines that she may replead claims against the Burlington County Defendants arising out of the strip search while keeping in mind the law discussed above and requirements of the Federal Rules, the Court will afford Plaintiff 30 days to file an amended complaint.[16]

### 2. Burlington Township Defendants' Motion

In addition to her claims against the Burlington Township Defendants for false arrest and malicious prosecution,[17] as well

---

[16] Even though Atlantic County has not appeared in the action, Plaintiff's claims against Atlantic County fail for the same reasons as her claims against the Burlington County defendants. The Court will therefore also dismiss Plaintiff's claims against Atlantic County *sua sponte*, but will do so without prejudice and with leave to amend, if she can do so consistent with the Federal Rules.  <u>See</u> <u>Bryson v. Brand Insulations, Inc.</u>, 621 F.2d 556, 559 (3d Cir. 1980) (holding that a "district court may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action").

[17] Plaintiff asserts claims under the U.S. Constitution and the analogous New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1. Like § 1983, NJCRA is a means of vindicating substantive rights and is not a source of rights itself.  <u>Gormley v. Wood-El</u>, 218 N.J. 72, 98, 93 A.3d 344, 358 (2014).  Because the New Jersey Civil Rights Act was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under either the United States or New Jersey Constitutions, the NJCRA is interpreted analogously to § 1983.  <u>See</u> <u>Norman v. Haddon Township</u>, 2017 WL 2812876, at *4 (D.N.J. 2017).

as a claim for municipal liability under Monell v. Dept. of
Social Services of City of New York, 436 U.S. 658, 694 (1978)
(providing that a local government may not be sued under § 1983
for an injury inflicted solely by its employees, but liability
may attach when it is the execution of a government's policy or
custom that inflicts the injury), Plaintiff claims that the
Burlington Township Defendants are liable for the allegedly
unconstitutional strip searches.

Plaintiff's claims against the Burlington Township
Defendants arising from the strip searches fail for two reasons.
First, the Court's finding that Plaintiff has no claims, as she
has pleaded them, against the Burlington County and Atlantic
County Defendants bars her claims against Burlington Township
Defendants arising from the same facts and legal theory.

Second, any claims Plaintiff asserts against the Burlington
Township Defendants regarding her strip searches also fail
because Plaintiff's complaint does not contain any allegations
as to how the Burlington Township Defendants were involved in
the strip searches.  Plaintiff may claim that she was only
subjected to the strip searches because of the Burlington
Township Defendants' unconstitutional actions, and are liable
for damages from what she endured as a result, but that claim is
distinct from Plaintiff's claims that arise directly from the
strip searches.  The failure of Plaintiff's complaint to plead

how the Burlington Township Defendants set or influenced County policies governing the strip searches, or were themselves part of the actual performance of the strip searches, is fatal to those claims against the Burlington Township Defendants.

Accordingly, Plaintiff's claims against the Burlington Township Defendants that relate directly to the performance of the strip searches, and the policies authorizing and implementing them, must be dismissed.[18]

---

[18] Plaintiff's opposition to the Burlington Township Defendants' motion on this issue focuses on how she has properly pleaded her false arrest, malicious prosecution, Monell, conspiracy, and equitable relief claims against them arising from her charge and arrest. The Burlington Township Defendants did not move to dismiss those claims, except that they argue that Plaintiff's conspiracy and equitable relief claims fail to state viable claims relative to her arrest because they do not meet the Twombly/Iqbal pleading standards. The Court finds that Plaintiff's conspiracy claim, while not robust, alleges that Cosmo and Concepcion ignored exculpatory evidence and acted in concert to bring false charges against her because she had asked to speak with a supervisor regarding Cosmo's initial phone call to Plaintiff. This is sufficient to survive Defendants' motion to dismiss. See Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184–85 (3d Cir. 2009) (citation omitted) ("The Court is mindful that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances. The Court is equally mindful that caution is advised in any pre-trial disposition of conspiracy allegations in civil rights actions. . . . The rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.") Additionally, because equitable relief is available under § 1983, Plaintiff's equitable relief count may proceed. See 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

## CONCLUSION

For the reasons expressed above, all of Plaintiff's claims arising from the strip searches performed at BCDC and ACCF must be dismissed. The remaining counts against the Burlington Township Defendants for false arrest, malicious prosecution, conspiracy, and for equitable relief may proceed. Plaintiff shall be afforded 30 days to file an amended complaint if she can do so consistent with this Opinion and the Federal Rules.

An appropriate Order will be entered.


Date: __December 13, 2017__          __s/ Noel L. Hillman__
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .").